NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARTA WILLIAMS, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MATHESON TRUCKING, *Respondent Employer*,

XL INSURANCE AMERICA, *Respondent Insurance Carrier.*

No. 1 CA-IC 22-0033
FILED 9-14-2023

---

Special Action - Industrial Commission
ICA Claim No. 20211200150
Carrier Claim No. 0476-WC-21-0000161
The Honorable Janet Weinstein, Administrative Law Judge

**AWARD AFFIRMED**

---

APPEARANCES

Marta Williams, Apache Junction
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, Phoenix
By K. Casey Kurth
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Jennifer M. Perkins and Judge Angela K. Paton joined.

---

**W I L L I A M S**, Judge:

¶1      Marta Williams brings this special action review of an Industrial Commission of Arizona ("ICA") award dismissing her protests of the denial of temporary disability benefits. The ICA found that Williams failed to cooperate with the prehearing discovery process, act with due diligence, provide evidence that would tend to support her claim, and that she prejudiced Matheson Trucking and XL Insurance America (hereinafter collectively "Matheson") by her actions. For the following reasons, we affirm.

**PROCEDURAL HISTORY**

¶2      Williams was injured in April 2021 while working for Matheson Trucking. She was struck in the head but did not lose consciousness. Williams was seen by physicians, diagnosed with head trauma, and released back to light-duty work. Matheson Trucking offered Williams temporary work it thought was compliant with the medical restrictions. But Williams disagreed and never returned to work. XL Insurance America accepted the claim as a no loss claim, meaning that no temporary disability benefits were warranted because Williams' injury did not cause her to lose more than seven days of work.

¶3      In June 2021, Williams requested an ICA hearing to show that she was entitled to temporary disability benefits. An initial hearing date was set for the fall.

¶4      During the late summer and early fall of 2021, counsel for Matheson attempted to depose Williams under the ICA procedural rules. *See* A.A.C. R20-5-142(A). Williams' deposition was first scheduled in August but then moved to September after Williams notified Matheson's counsel that she had gotten only a two-day notice. The deposition date was

2

changed again because of Matheson's counsel's travel schedule. Williams then requested rescheduling again. The day before the rescheduled deposition, Williams called Matheson's counsel wanting to reschedule yet again.

¶5          Matheson's counsel filed a written motion to the ICA administrative law judge ("ALJ") stating that Williams had twice "canceled" her deposition. Around the same time, Williams wrote to the ALJ requesting a "cancellation" of the initial hearing for mental health reasons. The ALJ took Williams' request as a withdrawal of her request for a hearing altogether and took no further action on the case.

¶6          The following month, Williams wrote to the ALJ stating that she never meant to dismiss/cancel the claim, just the hearing date. The ALJ reset Williams initial hearing for early 2022.

¶7          Roughly two weeks before the 2022 initial hearing, Matheson sent Williams a notice by mail of a January 20 deposition date. Williams felt uneasy about the deposition and, on January 18, emailed and called Matheson's counsel to ask that she be allowed to give "a written deposition" rather than an oral one. Williams and Matheson's counsel spoke by telephone on the afternoon of January 19. Williams said she was not feeling well and wanted to postpone the deposition. Matheson's counsel stated that they needed to complete the deposition, that it would be conducted by video conference, and that they could take breaks to accommodate Williams' health.

¶8          The next morning, January 20, Williams filed a request with the ALJ to be excused from the deposition because she had not been given sufficient notice and was trying to obtain representation but had not yet succeeded. The ALJ found that Williams did not receive the deposition notice at least 10 days before the deposition, as required by ICA rules, and postponed the initial hearing to March 2022. The ALJ also ordered Williams to comply with any properly and timely issued deposition notice. After learning from Matheson's counsel that Williams had not yet signed a release for medical records or answered interrogatories,[1] the ALJ also ordered Williams to sign the release and answer the interrogatories —warning Williams that her failure to comply with ICA prehearing procedures could result in sanctions, including dismissal of her claim.

---

[1] Any interrogatories sent to Williams are not in the record on appeal.

¶9          Williams then sought excusal from two independent medical examinations ("IME") scheduled in February 2022. The ALJ denied Williams' request. The medical examinations were completed and reports were issued. Also in February, Williams filed a second hearing request claiming that she was being denied medical care. This claim was consolidated with Williams' ongoing claim for temporary disability benefits.

¶10          The March 2022 initial hearing was scheduled to begin at 1:00 p.m. The morning of the hearing, however, Williams uploaded (for the first time) more than 200 pages of documents to use at the hearing. Some of the documents did not appear to be relevant or useable, such as internet medical articles and personal text messages. However, other documents, including medical records, were likely relevant. In addition, there were several written statements from Williams, in the form of testimony and argument, that were included in the uploaded documents. Williams had not subpoenaed any medical or lay witnesses for the hearing.

¶11          There were technical difficulties (internet connection issues) at the time the hearing was scheduled to begin. The ALJ eventually called the case and announced that the hearing would be postponed due to the number of documents filed that morning and Williams' unfamiliarity with the hearing process. Matheson's counsel informed the ALJ that Williams still had not been deposed and requested an order requiring Williams to attend a deposition. Counsel also stated that Williams still had not provided a medical records release.

¶12          The ALJ ordered Williams to immediately sign a medical records release and to attend a deposition on April 4, at 10:00 a.m. Some discussion ensued about the case, including a different release Williams previously signed. During the exchanges, Williams showed confusion about the process and asked several questions for clarification.

¶13          The ALJ also discussed the option for Williams to participate in the hearing either remotely or at the ICA building which had video conferencing equipment. Williams informed the ALJ that transportation from her home in Apache Junction to the ICA building in Phoenix was an issue, and that she had reserved a room at the library near her home to use since it had a better internet connection. The ALJ rescheduled the initial hearing to April 18 at 8:30 a.m.

¶14          That same day, Matheson's counsel sent Williams a notice of video deposition for April 4 at 10:00 a.m. The notice contained a video link

and a telephone number; however, the telephone number had a typographical error and was incomplete. The notice included an area code but only six digits instead of the seven-digit telephone number.

¶15  On April 4, just before noon, Williams filed a request with the ALJ to reschedule both the deposition and the initial hearing. She explained that she needed to reschedule the April 18 initial hearing to a different time because she could not access the library room as early as 8:30 a.m.

¶16  Williams also described what had happened that morning when she attempted to attend the deposition. She explained that a library employee had told her the rooms were accessible before 10:00 a.m., but when Williams showed up to set up for the deposition, the rooms were locked and staff did not arrive at the library until 10:00 a.m. Williams further explained that she sent an email to Matheson's counsel at 9:56 a.m. stating, "I will be at the deposition as soon as possible. I ran into some technical difficulties and I will log on as soon as they are released." Matheson's counsel emailed Williams back at 10:02 a.m. informing that he and the court reporter were waiting for Williams. He suggested that Williams use the telephone number if she could not get video conferencing to work. At 10:21 a.m., Williams responded by email that she had "tried calling the number and it keeps hanging up." Ten minutes later, she sent another email asking for a different phone number. The record contains no more correspondence about the deposition.

¶17  Later that day, Williams emailed Matheson's counsel about the medical records release he had sent her on March 18. Williams wrote, "Upon reviewing the attached document in preparation for signature I noticed I have not received a copy of the privacy policy. I would appreciate a copy of the policy so I can review it prior to signature."

¶18  These events prompted Matheson's counsel to file a motion to dismiss Williams' request for a hearing. Counsel wrote that "the deposition did not take place and Ms. Williams has yet to sign the medical authorization." Counsel explained that he and the court reporter had waited until 10:30 a.m. and that he had responded to Williams' emails, but that Williams never called for the deposition. Counsel argued that Williams had exhibited a "pattern of failing to cooperate with discovery," and that her hearing request should be dismissed.

¶19  Williams filed a response. She first stated that the library had misinformed her about the availability of the rooms at 10:00 a.m. and that she "had every intention of attending and participating in the deposition."

Williams repeated that she had tried calling the phone number listed on the deposition notice. She also argued that the parties could have worked it out if Matheson's counsel had responded to her last email that morning. She wrote that she intended to sign the medical records release but that "it is . . . unwise on my behalf to sign a document in which I am not fully informed of [sic]." Finally, Williams informed the ALJ that she was "facing homelessness" because she could not work and was not receiving benefits.

¶20 The ALJ granted Matheson's motion and dismissed Williams claim. In doing so, the ALJ found that Williams "ha[d] defied two Orders to provide an executed medical release" and answer interrogatories. The ALJ also expressed doubt about the integrity of Williams' statements concerning internet access issues, noting that she "had no problem uploading documents" to the ICA. The ALJ seemed particularly displeased that Williams had not reviewed the "privacy policy" associated with the medical release long before April 4. Lastly, the ALJ found that Williams lacked a "genuine effort" to appear for deposition.

¶21 Williams sought administrative review, arguing that she had never tried to delay or frustrate the process. Williams also denied receiving interrogatories. She restated that she was willing to sign the medical records release after she had reviewed the privacy policy. Williams also argued that she had tried to attend the depositions but had been "thwarted" by Matheson's counsel and technical issues. In short, Williams disagreed with the ALJ's characterization of her efforts.

¶22 The ALJ affirmed its decision without further analysis. This special action review followed.

**DISCUSSION**

¶23 An ICA ALJ may dismiss a hearing request if a party willfully fails to appear for a deposition or fails to comply with the ICA procedural rules or orders issued by an ALJ. A.A.C. R20-5-145(E)(2); R20-5-157(A)(1); *King v. Indus. Comm'n*, 160 Ariz. 161, 163 (App. 1989). Before dismissing a hearing request, an ALJ must consider the totality of circumstances when assessing various factors such as: (1) whether or not there has been a pattern of failing to cooperate with the process, including failing to appear for a deposition, (2) due diligence, (3) evidence supporting the claim's merits, and (4) prejudice to the opposing party, including the complete frustration of discovery. *Brown v. Indus. Comm'n*, 154 Ariz. 252, 254 (App. 1987). We review an ALJ's dismissal of a hearing request for an abuse of discretion. *Id.*

¶24        In considering the *Brown* factors, the ALJ found that the delays in taking Williams' deposition were "caused solely by [Williams]" and were without good cause. The record does not support that finding. Though Williams' deposition was rescheduled multiple times, some of the delays were caused by Matheson, not Williams. For example, Matheson's counsel (1) had travel plans that accounted for one rescheduling, (2) failed to provide Williams with timely notice of the deposition on another occasion, and (3) failed to give Williams an accurate phone number on yet another occasion.

¶25        Nonetheless, some delays in the case were caused by Williams. For example, Williams' deposition was continued several times (on very short notice) at Williams' request. Also, Williams' decision to disclose roughly 200 pages of documents (for the first time) on the morning of the March hearing resulted in the hearing being continued. And Williams' request on April 4 for the privacy policy associated with the medical records release indicates that Williams likely did not review the release until that day, despite having months to do so.

¶26        Further still, the ALJ ordered Williams in January, and again in March, to promptly provide a signed medical records release and answer interrogatories. Williams never did. And though Williams did provide medical records about her workplace injury, the two IME reports support the ALJ's conclusion that the evidence "does not appear to be sufficient [for Williams] to meet her burden of proof." For these reasons, we cannot say the ALJ abused its discretion in dismissing Williams' request for a hearing.

**CONCLUSION**

¶27        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA

7